IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| HAL D. RENFRO, Trustee of the Renfro Family Trust,<br><br>Plaintiff,<br><br>v.<br><br><br>MILO McCOWAN, et al.,<br><br>Defendants. | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br><br><br><br>Case No. 2:05-CV-00498 |

This case requires the court to determine whether an informal road that traverses through both defendants' and plaintiff's land has been dedicated and abandoned to the use of the public. Plaintiff Hal D. Renfro ("Renfro") believes that he has presented clear and convincing evidence that the informal road in issue (the "Road") has been continuously used as a public thoroughfare for a period of ten years, and has thus been abandoned and dedicated to the use of the public. Defendants argue that Renfro has failed to meet this burden because of an alleged lack of evidence showing that the Road has been used continuously for ten years, and an alleged dispute as to whether it is, in deed, the "public" that has used the Road. The court agrees with Renfro that he has presented clear and convincing evidence that the Road has been dedicated to the public. Consequently, the court GRANTS his motion for summary judgment (#53) in so far as

the court finds that the Road has been abandoned and dedicated to the use of the public.

Also before the court is a motion for partial summary judgment filed by defendants (#61). In addition to addressing the Road issue in their brief, defendants argue that some of the named parties have been wrongfully named as defendants in this action.  The court finds that all of the named defendants have an interest in the Road, either as owners of the land directly affected by the Road or simply as potential future users of the Road.  The court's holding on the Road issue does not involve damages.  Moreover, the named defendant responsible for the alleged trespass and grading of Renfro's property, the only issue in this case that may result in damages, has offered to restore the Renfro land to its original condition.  Consequently, the court DENIES defendants' motion for partial summary judgment (#61).  The court's granting of Renfro's motion for summary judgment effectively closes this case.  All claims having been resolved, the court directs the Clerk's Office to close this case.

## BACKGROUND

When considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.[1]  Viewed in this light, the record reflects the following facts.

*A. The Renfro Property*

Renfro is the owner in trust of a parcel of land (the "Point") on the top of a ridge that overlooks the Green Valley Golf Course in St. George, Utah.  It may go without stating that the Point is located on the point of the ridge.  On June 28, 2005, Renfro deeded property working

---

[1] *Cortez v. McCauley*, 438 F.3d 980, 988 (10th Cir. 2006).

down the "back" and "sides" of the Point to a real estate development firm not currently involved in this case. Although no access right-of-way was retained by Renfro with regard to the transfer of land to the real estate development firm, Renfro contends that access to the Point from this transferred land is impractical due to the steep terrain. The "frontside" of the Point currently borders land owned by Defendant QRS, Inc. ("QRS"). Renfro believes that the Point could be developed within the requirements of local laws and regulations for one or two residential lots worth several hundred thousand dollars each.

### B. The QRS Property

QRS is an owner or developer of the Highlands Green Valley subdivision (the "Highlands") in St. George, Utah. Defendant Milo McCowan ("McCowan") is a partner in both QRS and Castle Rock Development of Southern Utah, LLC, ("Castle Rock") two companies that consist of the same members. In the Fall of 2003, Castle Rock purchased the parcel of land currently being developed as the Highlands from the Kay Traveller Development Company. Kay Traveller owned this property for at least ten years prior to the conveyance to Castle Rock. Shortly after the acquisition, Castle Rock deeded the land to QRS.

The QRS property borders the Renfro property at the southeast corner of the Highlands. The southeast quadrant of the Highlands is a steep, southeast-trending ridge that leads to the Point. QRS has platted three lots that would come within about 120 feet of the Renfro property. More importantly, these three platted lots are located over the Road where it reaches the Point.

### C. The Road

In the vicinity of the Highlands and the Point are a number of informal, unpaved roads

that connect to various public ways. The informal road at issue - the Road - extends along the ridge of the Highlands and ends in a loop around the perimeter of the Point. The loop is formed around the outer limits of the flat surface of the Point, and reconnects with the Road of which it is a part.

QRS has platted the Highlands to utilize the Road as an access to many of the lots. The improved Road ends in a cul-de-sac at the lots bordering the Renfro property, and has been labeled Pike Circle. The cul-de-sac destroys the bottom part of the loop at the end of the Road, disconnecting the remainder of the loop from the rest of the Road of which it is a part. In the course of construction of the Highlands, Quality Excavation, under contract to QRS, entered the Point and graded and removed a portion of the Point's surface. Quality Excavation subsequently offered to restore the Point to its original condition.

Renfro has provided aerial photographs from 1978, 1985, and 2004, which show the existence of the Road. The Road can be plainly seen in all three photographs. Gary Esplin and McCowan, two long-time residents of St. George, both confirmed that the 1985 and 2004 photographs accurately depict the Road and its surrounding area. As a long-time resident of St. George, McCowan also noted that the area around the Road has been notorious for four-wheelers and motorcycles to ride. Having raised his kids in that area from 1980 through 1988, McCowan referred to the area of the Road as "four-wheeler heaven for the kids."[2] Mr. Esplin is also aware that the area has been used for such purposes.

Speaking specifically about the Road, McCowan testified that "it's a place where people

---

[2] McCowan Dep. 15:2-3, Apr. 18, 2006.

used to drive out and drive to the end, and once they got to the end, they had no place to go but turn around and come back out. It's a view spot."[3] McCowan noted that people would go and look off that point much like they would look off other points. Jack Willis, another long-time resident/visitor of the area, is the owner of an interest in a Sports Village condominium located in the general vicinity of the Road. He has observed that the Road has been used frequently over the past twenty-one years by all types of outdoor vehicles. Mr. Willis, himself, has often used the Road over this twenty-one year period.

Mr. Traveller, in his affidavit, states that neither he nor his company ever permitted the public to come onto his property, or attempted to deter anyone from use of the Road. Moreover, McCowan was unaware of any barriers or blockage to use of the trails in the area of the Road for the entire time that he has been familiar with the area.

Based upon these facts, Renfro argues that he has satisfied his burden to prove by clear and convincing evidence that the Road has been dedicated to public use. QRS contends that Renfro has failed to establish undisputed facts which would support summary judgment on this issue. In addition to the Road dispute, Renfro argues that defendants have graded and removed soil from its property without permission and in trespass. Because Quality Excavation has offered to restore the land affected by its trespass and grading of the Point,[4] the court will limit its discussion to the issue of the potential public thoroughfare.

---

[3] *Id.* 18:1-5.

[4] Tomaiko Dep. 37:17-25; 38:21 - 39:6, Apr. 18, 2006; Def.'s Status Report, Aug. 21, 2006 (Docket No. 66); Pl.'s Mem. Supp. Summ. J. 7 (Docket No. 56).

**STANDARDS OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5]  In evaluating a motion for summary judgment, the evidence and reasonable inferences drawn therefrom should be viewed in the light most favorable to the nonmoving party, in this case the defendants.[6]  Utah law requires that dedication of a road as a public road must be proven by clear and convincing evidence.[7]  The "burden of establishing public use for the required period of time is on those claiming it."[8]

**DISCUSSION**

Renfro seeks summary judgment on the grounds that QRS has platted a portion of the Highlands over, and otherwise destroyed an established public thoroughfare – the Road – leading to the Renfro property.  McCowan contends that the Road is not a public thoroughfare because Renfro has failed to show that the Road has been used continuously by the public for a ten year period.  The court is persuaded that Renfro has met his burden and that summary judgment in his favor is proper.

Under Utah law, "[a] highway is dedicated and abandoned to the use of the public when it

---

[5] Fed. R. Civ. P. Rule 56(c).

[6] *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).

[7] *Draper City v. Estate of Bernardo*, 888 P.2d 1097, 1099 (Utah 1995) (citing *Thomson v. Condas*, 493 P.2d 639, 639 (Utah 1972)).

[8] *Leo M. Bertagnole, Inc. v. Pine Meadow Ranches*, 639 P.2d 211, 213 (Utah 1981).

has been continuously used as a public thoroughfare for a period of ten years."[9] Accordingly, courts interpreting this statute (or its similar predecessor) require proof of the following three elements before finding that a road has been abandoned to the public: there must be (1) continuous use, (2) as a public thoroughfare, (3) for a period of ten years.[10] The definition of public thoroughfare consists of the following: "(i) [t]here must be 'passing or travel,' (ii) the 'use must be by the public,' (iii) use by permission does not constitute use as a public thoroughfare . . . ."[11] As noted above, Utah law requires that dedication of a public road be proven by clear and convincing evidence.[12] Consequently, Renfro has the burden to prove by clear and convincing evidence that the Road has been abandoned to the public. The court is persuaded that Renfro has met this burden.

### A. Continuous Use for Ten Years

The first and third elements of the test require Renfro to provide clear and convincing evidence that the Road has been used continuously for a period of ten years. "[C]ontinuous use of a road exists when 'the public . . . made a continuous and uninterrupted use' not necessarily every day, but 'as often as they found it convenient or necessary.'"[13] Furthermore, "use may be continuous though not constant . . . provided it occurred as often as the claimant had occasion or

---

[9] Utah Code Ann. § 72-5-104(1) (2001).

[10] *Heber City Corp. v. Simpson*, 942 P.2d 307, 310 (Utah 1997).

[11] *Id.* at 311 (quoting *Morris v. Blunt*, 161 P. 1127, 1131 (Utah 1916)).

[12] *Draper City*, 888 P.2d at 1099 (citing *Thomson*, 493 P.2d at 639).

[13] *AWINC Corp. v. Simonsen*, 112 P.3d 1228, 1230 (Utah Ct. App. 2005) (quoting *Boyer v. Clark*, 326 P.2d 107, 109 (Utah 1958)).

chose to pass.  Mere intermission is not interruption."[14]

Renfro has provided aerial photographs from 1978, 1985, and 2004, which show the existence of the Road.  The Road is plainly visible in all three photographs.  McCowan and Esplin both confirmed that the 1985 and 2004 photographs accurately depict the Road and the area surrounding the Road.  While this evidence might not be enough by itself to show continuous use, Renfro has produced affidavit and deposition testimony supporting what the photographs plainly suggest.  In addition to confirming the accurateness of the photographs, McCowan also testified that "this [area] has been a notorious area for four-wheelers and motorcycles to ride."[15]  McCowan, having raised his kids in that area from 1980 through 1988, referred to the area of the Road as "four-wheeler heaven for the kids."[16]  Speaking specifically about the Road, McCowan testified that "it's a place where people used to drive out and drive to the end, and once they got to the end, they had no place to go but turn around and come back out.  It's a view spot."[17]  Renfro also supplied the court with an affidavit from Jack Willis, in which he states: "In the twenty-one years that I have owned property nearby, I have observed that this loop has been used continuously and frequently by all types of outdoor vehicles approaching from the northwest to exploit the view from the end of the point.  I have often used the Road and the loop

---

[14] *Campbell v. Box Elder County*, 962 P.2d 806, 809 (Utah Ct. App. 1998) (citation omitted).

[15] McCowan Dep. 14:21-22.

[16] *Id.* 15:2-3.

[17] *Id.* 18:1-5.

as described over this period."[18]

The aerial photographs, coupled with the affidavit of Jack E. Willis and depositions of McCowan and Esplin, provide clear and convincing evidence that the Road has been used continuously for at least ten years.

### B. Use as a Public Thoroughfare

The next element for discussion is whether the Road has been used as a public thoroughfare. The Utah Supreme Court has established three requirements that must be satisfied before a road qualifies as a public thoroughfare: "(i) [t]here must be 'passing or travel,' (ii) the 'use must be by the public,' (iii) use by permission does not constitute use as a public thoroughfare . . . ." As displayed above, Renfro has submitted clear and convincing evidence that there has been "travel" on the Road. The court, as more fully discussed below, is also persuaded that Renfro has produced clear and convincing evidence showing that the Road was used by the public, without the permission of the private landowners.

When determining whether it is the public that has used a potential public thoroughfare, it is necessary to first define "public." The Utah Court of Appeals has noted the importance to distinguish "between use of a road by owners of adjoining property and by the general public. 'Such property owners cannot be considered members of the public generally, as that term generally is used in dedication by user statutes.'"[19] The reasoning behind this distinction "is

---

[18] Willis Aff. ¶ 7.

[19] *Kohler v. Martin*, 916 P.2d 910, 913 (Utah Ct. App. 1996) (quoting *Peterson v. Combe*, 438 P.2d 545, 546 (Utah 1968)).

because adjoining owners may have documentary or prescriptive rights to use the road or their use may be by permission of the owners of the fee of the road."[20]  Consequently, the "public" includes those normally recognized as being the public, with the exception of owners of adjoining property and those using the road by permission.

The record provides clear and convincing evidence that the continuous use of the Road has been by members of the public.  In his affidavit, Jack Willis states that the Road has been used "by all types of outdoor vehicles approaching from the northwest to exploit the view from the end of the point."[21]  In addition to observing this traffic, Mr. Willis states that he has often used the Road over the twenty-one years that he has resided in the area.[22]  Mr. Willis clearly does not qualify as an adjacent landowner.[23]  McCowan admitted that individuals used the Road to find a view spot, noting that "it's a place where people used to drive out and drive to the end, and once they got to the end, they had no place to go but turn around and come back out."[24]  He states that "people would go out and look off that point as they would other points."[25]  Additionally, McCowan testified that the area around the Road "has been a notorious area for four-wheelers

---

[20] *Id.*

[21] Willis Aff. ¶ 7.

[22] *Id.*

[23] *See Kohler*, 916 P.2d at 913.

[24] McCowan Dep. 18:1-4.

[25] *Id.* 23:9-10.

and motorcycles to ride"[26] and that the area was "four-wheeler heaven" for his own kids.[27]

Commingled with the second prong involving use by the public, is the third prong regarding permissive use. Under Utah law, "permissive use cannot result in either adverse possession or dedication of private property to the public."[28] Renfro has produced clear and convincing evidence to show that the individuals using the Road did not have permission. In his affidavit, Mr. Traveller states: "Neither I nor my company ever permitted or attempted to deter anyone from [use of the Road]. I never observed anyone else attempt to deter such use."[29] Mr. Traveller states further that to the best of his knowledge, "the public would have had unobstructed use of this road throughout the period the Highlands property was owned by [his] company."[30] Moreover, McCowan was unaware of any barriers or blockage to use of the trails in the area of the Road for the entire time that he has been familiar with the area.

Accordingly, the unobstructed use of the Road by Mr. Willis, coupled with the evidence of unobstructed and constant use by numerous recreationists and sightseers, provides clear and convincing evidence that the users were not adjacent landowners, but members of the public enjoying the outdoors. Renfro, therefore, has provided clear and convincing evidence that the Road was a public thoroughfare for the purposes of Utah Code § 72-5-104.

---

[26] *Id.* 14:21-22.

[27] *Id.* 15:2-3.

[28] *Campbell*, 962 P.2d at 809.

[29] Traveller Aff. ¶ 5.

[30] *Id.* ¶ 4.

The court finds that Renfro has shown by clear and convincing evidence that the Road has been continuously used as a public thoroughfare for a period of ten years.

### C. Other Issues

Defendants point to case law in which the court gives considerable weight to the issue of how a potential public thoroughfare was created. Defendants argue that under Utah law, if a trail was created by a past property owner as a private way, "it's use, however long, as a private way, does not make it a public way; and the mere fact that the public also make use of it, without objection from the owner of the land, will not make it a public way. Before it becomes public in character the owner of the land must consent to the change."[31] Defendants' reliance on this case law is unhelpful for two reasons. First, defendants admit that the "trails at issue in this case were not established to access any specific portions of property for the benefit of any property owner."[32] Second, and more conclusive, this rule of law has been overruled in a subsequent Utah Supreme Court decision.[33]

### CONCLUSION

Because Mr. Renfro has provided clear and convincing evidence that the Road has been continuously used as a public thoroughfare for a period of ten years, Renfro's motion for summary judgment is GRANTED (#53) in so far as the court declares that the Road has been

---

[31] *Morris v. Blunt*, 161 P. 1127, 1131 (Utah 1916) (quoting Byron K. Elliott & William F. Elliott, A Treatise on the Law of Roads and Streets § 5 (1890)).

[32] Def.'s Mem. Opp. Summ. J. 3.

[33] *Draper City*, 888 P.2d at 1099.

abandoned and dedicated to the use of the public. As mentioned above, QRS has motioned the court for partial summary judgment to remove some of the named parties that have allegedly been wrongfully named as defendants in this action (#61).  The court's holding on the Road issue affected each of the named defendants, and because there are no damages involved in light of Quality Excavation's offer to restore the Renfro property to its original condition, the court finds it unnecessary to address defendants' jurisdictional issues in their motion for partial summary judgment.  Consequently, the court DENIES defendants' motion for partial summary judgment (#61).  All claims having been resolved, the court directs the Clerk's Office to close this case.

>SO ORDERED.

>DATED this 9th day of November, 2006.

>>BY THE COURT:

>>_____
>>Paul G. Cassell
>>United States District Judge